21-1884, United States v. Brian Alexis Diaz-Serrano. At this time, would Attorney DeMayo please introduce himself on the record to begin? Good morning. May it please the Court, Christopher DeMayo for Mr. Diaz-Serrano. Would you like to reserve any time for rebuttal? No, I'll just talk through. We've raised two arguments about why Mr. Diaz-Serrano is entitled to resentencing, and as I prepared for this argument, it struck me that maybe I'd done things the hard way in the briefs, and I started with the complicated constitutional issue first, and then I had the simple non-constitutional issue second, which is the criminal history. So, since courts prefer to avoid constitutional issues and like easy issues rather than the hard issues, I thought I would flip that around for the argument. I'll start with the criminal history. Mr. Diaz-Serrano's criminal history, such as it was, was just arrests. He was either dismissed or he was acquitted. Yet, the judge spent some time when he was reciting, when he was leading up to giving the sentence, talking about these arrests. And I would submit, from the context, it appears to me he actually considered these substantively. He set it in with admittedly relevant sentencing factors like Mr. Diaz's age, his education, his drug use. And again, it's in the context of him leading up to why he's giving a sentence that seems to me he actually was considering this. And that's an error of law. It's a matter of law that's wrong. Now, the Commonwealth cites some cases where, this case is a little bit different from all the cases I found, certainly from the cases the Commonwealth cites. There are cases where in the course of reading a defendant's criminal history, you have sort of a mix of and arrests that lead to convictions. And this court has not sent cases back for resentencing in those cases. But we don't have that here. And of course, there are cases where a judge talks about an arrest and then disclaims. But I'm not going to rely on that. And that certainly didn't happen here. So I would submit that it appears he did rely on it. The Commonwealth says, well, there's ambiguity. And if there's ambiguity, it can't be plain error. And I guess I have two responses to that. The first is, we'd submit it's not that ambiguous. It appears more likely that he was relying on these for the substance than not. And the second argument is, this is a remand for resentencing. A lot of the cases the Commonwealth talks about, I keep saying Commonwealth, excuse me. I'm used to being in state court. A lot of obviously, a great drain on the justice system and the taxpayer. These resentencings, not without cost, but this could probably be done quickly. And perhaps, if Mr. Diaz gets the same sentence, then so be it. But in that case, we'll know that the judge was just reading these arrests into the record and not relying on them. And I would especially for appellate lawyers and judges, this should be clear. So if nothing else, it would discourage that kind of behavior. So that's my first argument. If the court has no questions, I will talk about the Booker. Okay, the Booker argument. So there's two parts to this argument. The first part, I think, is not controversial. The second part, I'm sure, is controversial. The first part, which was preserved at trial, was if you set aside the sentencing recommendations, if you look at just the pleas, I think everyone can agree that it's unreasonable, substantively unreasonable, and abused of discretion to sentence two, like similarly situated defendants, to disparate sentences. Now, I realize the government's going to say that they're not similarly situated because of the PSR, so this and that. That's just, that follows from the general principle that when you sentence, the sentencing judge should sentence no more than necessary to achieve the aims of punishment. Otherwise, it's unreasonable. This is an interesting case because the other co-defendant, who I thought was going to argue before I did, but who didn't, Mr. Melendez, is sort of like the control in this case because he is, if you read the two pleas, they're almost identical. And if anything, he's worse situated than Mr. Diaz, not similarly, because he had other convictions that actually did, other arrests that did lead to conviction. So, he has a worse criminal history. So, just looking at that, I would submit it's unreasonable to give Mr. Diaz a higher sentence than Mr. Melendez. The second part of the argument, which is the more controversial part, is who decides this. And our position is, and we think it follows from the Booker case, that if there's a difference between an otherwise unreasonable sentence and a reasonable sentence based on some aggravating factor, or I guess mitigating factor, but here aggravating factor, that ought to be found by the jury, not the judge. And we take that straight from the language. Counsel, you're just making this stuff up. I mean, you're trying to undo decades of precedent. I just don't understand where this is all coming from. I mean, you get some points, I guess, for ingenuity, but you are virtually acknowledging that you're trying to undo many years of precedent. So, I just don't get where this comes from. Well, it comes from Booker. It comes specifically from the language in Booker that the statutory, well, it comes from Apprendi. So, it goes all the way back to 2000. But Booker, in particular, held the statutory maximum for Apprendi purposes is the maximum sentence a or admitted by the defendant. Statutory maximum does not mean the maximum sentence set forth in the statute or else they would have just said that. Counsel, that was problematic because that was a mandatory guidelines regime. We're no longer in that world. We're now in an advisory guidelines regime. And so, those aspects of sentencing that were problematic at that time just don't apply now. I disagree. I don't see how they cannot apply. The basis for the government's argument here is the basis the government made in Booker. It's the basis they made in Eileen. And it's sort of a greater power implies the lesser. And it's, well, Judge Bessos could have given you life in prison. So, he didn't. So, if you got any sentence less than life, he can rely on whatever facts he wants, including facts he found. It doesn't need to be a found plagiary. That was rejected. That's been rejected over and over. I mean, that was rejected in Booker. It was rejected in, before Booker in the Blakely case. It was rejected in the Eileen case, which the Eileen case would make no sense whatever if that theory held, as we point out in the reply brief. So, I will admit, I do concede in the brief that I'm going against precedent in other circuits. I'm not aware of any precedent that's directly contrary here. And I submit it's the best reading of the case. I mean, this idea that you have 210 months as the upper boundary, it can't be that what's in a plea agreement that's up to the district court judge to, within his discretion, that the amount agreed upon is the maximum. I agree. No, and that's, I'm not arguing, that's why I said it's an argument in two parts. So, the first part of the argument was to sort of fix Mr. Melendez, because we have Mr. Melendez, and because a sentence should be no more harsh than necessary, and because it was sufficient for him. That's why I said he's the, he kind of sets the, what is a reasonable, what is sufficient to punish someone for all the stuff, the bad stuff that's in the plea. For Melendez, that was 194 months, but I didn't want to muddy it up by saying that, because we can, the plea deal here was 210 months, so he can, but anything above, if Melendez got 194 months and the plea deal was 210, which is above what was necessary to punish a defendant for this conduct, that's where the 210 came from. We're not saying that every time there's a plea deal and the government, just because the government agrees to a sentence, it's reasonable. We're saying, in this particular case, we know it made, I mean, Judge Beroso said it made a difference, because defense counsel was very, he was pretty adamant on the record. He said he increased it 47 percent off of Mr. Melendez and so forth, and he said, there's a difference here, they're not the same, I'm changing, I'm giving him a harsher sentence because of these factors that I found in the PSL report. So, he was, so yes, to be clear, to answer your question, Judge Beroso, it's not the, the reasonable length of the sentence here comes from the fact that we have this other person, Mr. Melendez, and we know what was sufficient to punish him. Counsel, I, I mean, the judge, the PSR is uncontested. It sounds a bit like a repeat of the earlier case, but, I mean, it is black letter law that if there are facts set forth in a pre-sentence report and they are not contested, the judge at sentencing can rely upon them as uncontested, and the facts here include, and this was apparently very important to the judge, that your client was apparently the leader of this group. I mean, he, he accepted the call that said that the victim should be executed. I, I gather the judge viewed that as an indication that he was the leader, and that was apparently a very important factor in his decision. What's wrong with that? And distinguishes him, distinguishes him from the co-defendant. I, I, I didn't get leader out of it, I have to say. I, I got the, I, the way I read it, and I may be wrong, is he, he got a call and he received an order, so it sounded to me more like a, a lackey or a henchman than a leader, but be that as it may, the judge can certainly, we concede, and I guess I'm just arguing the same thing I already argued before, if there had been a, if there had been a range here, if there's a reasonable range, say, the government and Mr. Diaz had agreed, there shall be a sentence between 180 and 210 months. Certainly then the judge, because it would be within the range of what's already been quadruple hearsay, PSR, a probation officer saying what is in the criminal complaint, which is written by a U.S. attorney, which got it from a police officer, which got it from a witness, that would be fine, but I'm submitting that if it's above a reasonable range or above a reasonable amount, then it's inappropriate and it has to be, it has to be the jury. That's the distinction. So yes, there is a role for hearsay, there is a role for PSRs, but in this particular case where it would be an otherwise unreasonable sentence, there's not. Thank you. Your time is up, Judge Lopez. Do you have anything further? Nothing further. Thank you. Thank you. Thank you, counsel. At this time, if Attorney Bornstein would please introduce himself on the record again. Good morning, Judge Montecalvo. David Bornstein on behalf of the United States. May it please the Court. The District Court properly sentenced the defendant to 240 months in prison for aiding and abetting the discharge of a firearm during and in relation to a kidnapping that resulted in death. The defendant brings three claims of error against this sentence. One is a substantive reasonable claim, which is preserved and reviewed for abuse of discretion. But two are procedural claims of error that the defendant concedes he forfeited below and thus are reviewed only for plain error. But in his opening brief, the defendant failed to argue the fourth prong of plain error review, that any error seriously impacted the integrity of judicial proceedings. A quick factual question for you. What do you make of that phone call that the defendant received? I believe it showed that of the people who kidnapped and murdered the victim, the defendant was the one chosen by whoever gave the order to be the one who would get everyone together. And they then proceeded, you know, he got together a group of armed men, and then they proceeded to kidnap the victim. Moreover, the defendant showed himself to be one who stood out from the rest. He is the one who spoke to the victim's girlfriend when they went to the victim's home and called for the for the one who stayed behind with someone else in order to burn the car that the victim was transported in, in order, the court found, to destroy evidence of that offense. But to return to why we believe that this court simply should not review the procedural claims of error, the defendant failed to argue the fourth prong of plain error review in his opening brief. To be sure, on pages four and five of his reply brief, he says that it may be presumed that he would have an argument showing the fourth prong of plain error review, and then he faults the government for not preemptively responding to a presumption he did not invoke or raise in favor of the fourth prong of plain error review. But that's not, you know, it's not the appellee who bears the burden of presuming what the government, what the appellant would argue and then responding to it. It's the appellant who bears the burden to argue all four prongs of plain error, and he should be that when the appellant does not argue all four prongs of plain error, he weighs review of his claim entirely. But even if this court were to reach both procedural claims, he doesn't show error, let alone plain error. I'll begin with the Sixth Amendment claim. The defendant argues that the district court... Hold on, can you begin with the other one, the prior arrest? Oh, of course. So, beginning with the prior arrest. First of all, on page 14 of the defendant's opening brief, he concedes that it is not clear, based upon the record, whether the district court relied on the arrest or not. That concession is critical because under this court's case law, the district court only commits error that relies on those arrests in a manner that equates them with guilt. That was the court's holding in the United States against Marrero-Perez. Now, on that oral argument, my take back that concession and argue for the first time that he believes that the district court relied on it, but that concession on page 14 is critical. When he says it is not clear, that means that there can be no clear or obvious record, error on the record. Now, my friend argued that this court should find that even though the error is not clear on the record, he nonetheless proved plain error since he's only seeking a resentencing as opposed to retrial, but that's not how plain error works. It doesn't depend upon the relief you're seeking. It depends upon whether or not the error is clear or obvious in the record, and his concession shows it's not. If you relied on something, if you impermissibly relied on something, which is what he's arguing, in this case, relying on prior arrests, I mean, doesn't that sort of necessarily impair the in his opening brief, this is page 14, that it's not clear from the record whether the district court relied on those arrests? But that's a different argument than not arguing the fourth prong, right? This is effectively a concession that he cannot prove the second prong of plain error, but in any event, we believe that it is plain that the district court did not rely on the arrests. If you look at the section where the district court mentions the arrests, it is during the part where the court is calculating the defendant's guideline, the guideline calculation, and the court is reviewing his criminal history, and all that the court does is it recites information that was uncontested from the PSR, and after the court recites that arrest record, and all that it does is chronicle it, it then goes on to discuss other 3553a factors, but when it finally, sorry, it then says that the PSR correctly calculated the guideline sentence, and then when the court goes on to explain why it handed down the sentence that it did, it does not refer to the arrest record again. It predicated its sentence completely upon the nature and circumstances of the offense, and I believe it is thus clear that the court did not rely on it, and there's plenty of case law by this court saying that there is no error when a district court recites uncontested facts from the PSR, including the arrest record that doesn't result in conviction, and if it does so, merely as a matter of historical fact. Now, my friend does say, well, why would the court do so? Simple. This court has said time and again, one's arrest record is part of the defendant's criminal history, and so it is something that the court may recite. The defendant claims that this court has never okayed such a recitation of criminal history, where there are simply arrests that don't result in conviction. I'm actually not sure that's an appropriate distinction to make. First of all, all that he does is he cites language from the prior cases of this court, in which the court simply says the arrest record is part of the criminal history. That doesn't indicate necessarily that those defendants had prior convictions, but in any event, the claims of error in those prior cases is that the court should not have mentioned arrests that don't result in conviction, and each time this court has said it's okay. Just to give two examples, if I may, your honor. In one case, United States against Diaz Rivera, that is 957 F3rd at 20, this court affirmed the district court reciting 10 arrests that didn't result in conviction. That was a claim of error. This court simply recited them as a matter of history. In the United States against Ruperto Rivera, that is 16 F4th 1, the 2021 decision of this court, this court again said there was no error when a similar thing happened, stating, and I'm quoting, the sentencing court did nothing more than recite the appellant's arrest record, including dismissed criminal charges, as it narrated his criminal history. The defendant's criminal record is a part of this history, and a sentencing court does not abuse its discretion simply by chronicling that record. That, again, is all that happened here. Now to move on to the defendant's Sixth Amendment claim. There are many problems with that claim. I think the clearest one is, as Judge Lopez pointed out, he's trying to undo decades of precedent. He relies entirely upon United States against Booker in order to prove his Sixth Amendment claim, which is that any fact found by a judge that increases the substantively reasonable range of sentences implicates the Sixth Amendment, and thus must be something that the defendant admits to him pleading guilty. However, that is not what Booker says. Booker simply reaffirmed it. What the defendant is relying upon is at the very end of Justice Stevens's opinion for Booker. All that the defendant uses that language because it simply talks about how any fact which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty, or a jury must be admitted by the defendant or proved to a jury beyond a reasonable doubt, uses that language because it doesn't specifically talk about statutory maximums. If you look at page 233 of Justice Stevens's decision, he lays out what the Sixth Amendment says, and I'm quoting now, if the guidelines as currently written could be read as merely advisory provisions that recommended rather than required the selection of particular sentences in response to the differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. That's why the remedial holding in Booker was to make the guidelines advisory. The court said, you know, as long as it doesn't change the statutory range, judge found facts may affect the sentence. And if that weren't enough, you can go to Apprendi itself. The rule that was applied in Apprendi can be found at 530 U.S. page 490. This is the rule that was applied. In some, a re-examination of our cases in this area and of the history upon which they rely confirms the opinion that we express in Jones other than the fact of a prior conviction. Any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Now, Apprendi was extended by the Supreme Court in Alene, but it was just extended to hold that the Sixth Amendment is also implicated by any fact that increases the statutory floor, but you don't have to take my word for it. That is also this court's reading of it. In the United States against Gonzalez, which is 857 F3rd Act 46, 2017 decision of this court, the defendant argued that any fact that enhances his guideline sentence implicates the Sixth Amendment. This court unanimously rejected that claim and said as follows, Alene and Apprendi do not require sentencing facts that do not change the statutory sentencing range to be found beyond a reasonable doubt. And if I may quickly touch on his substantive reasonable misclaim. Let's first see if Judge Lopez has any questions. I do. Thank you. Just very, very succinctly. We have said many times that the district court and on appeal, we should be very sensitive to sentencing disparities among co-defendants. I mean, here you have that situation and on its face you have co-defendants who participated in the same brutal crime. The defendant who gets the longer sentence between the two defense we're talking about does have a lesser criminal history. And yet he does end up with a significantly higher sentence. What on this record, given what Judge Pososo said, what justifies that very substantial sentencing disparity? What are the factors in your view relied upon by Judge Pososo that justify that disparity? Yes, Your Honor. It's not something in my view. You can find it on addendum page 22. This is where Judge Pososo explained why he gave the defendant a higher sentence than his co-defendant, Roberto Melendez. He said, and I quote, there's a difference between your client and Mr. Melendez. First of all, your client was called and given the order to murder the victim. Second of all, he participated in the burning of the Camry, which the victim had been placed in, in an attempt to get rid of, I'm going to skip since he jumbled the sentence, in an attempt to eliminate any determination that the victim was inside the Camry. So Judge Pososo specifically pointed to two distinguishing facts. The defendant here received the call ordering the murder. And then after the fact, he sought to destroy evidence by burning the vehicle that had transported the victim to where he was murdered. Now the defendant does not challenge those two reasons given by the district court for the higher sentence. And I believe that where a court gives a reason, gives reasons in the record for its decision, it is imperative that the defendant actually contest those reasons in his opening brief, if he wishes to show an abuse of discretion. And whereas here the defendant does not contest those reasons, this court should hold that his claim of error is weight. Moreover, your honor, just to quickly sum up, we believe that 240 months was a condemned sentence based not only upon the facts that the defendant pleaded guilty to, keep in mind that he pleaded guilty, in pleading guilty, he admitted to participating in a kidnapping that resulted in a murder. Those admitted facts actually satisfied the elements of count one of the indictment. And Congress said that when you commit a kidnapping that results in death, there are two appropriate sentences, death and life imprisonment. If you look at the a felony like kidnapping results in death, the murder cross-reference under guideline 281.1 applies. If that had been applied to this defendant, he would have had a base offense level of 43, a total offense level of 40, once you subtract three points for acceptance and responsibility. And even with this criminal history of one, the advised sentencing guideline would be 292 to 365 months. So his 240 month sentence, far from being above the maximum substantively reasonable sentence, was actually near the lower end of substantively reasonable sentences. He got a good deal. In sum, we would ask this court to affirm the defendant's sentence. We believe that it should not review his procedural claims because he waived it. But even if it were to review it, he is not shown plain error, either under the sixth amendment or for simply reciting his arrest history. And finally, his 240 month sentence for his active and instrumental role in a kidnapping resulting in murder is condemned punishment and was reasonable. Thank you, Your Honor. Thank you. That concludes argument in this case.